**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**EFRAIN SANTIAGO,**

                              **Plaintiff,**

              **-against-**

**CITY OF NEW YORK, et al.,**

                              **Defendants.**

**20-cv-6098 (ALC) (SLC)**

<u>**OPINION & ORDER**</u>

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Efrain Santiago, a former police officer with the New York City Police Department ("NYPD"), alleges discrimination, harassment, disparate treatment, and retaliation on the basis of race (Black Hispanic), national origin (Puerto Rican ancestry), and color (Black Hispanic) under (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); (2) 42 U.S.C. § 1981 ("Section 1981"); (3) 42 U.S.C. § 1983 ("Section 1983"); (4) New York State Human Rights Law ("SHRL"), N.Y. Exec. Law § 296 et seq.; and (5) New York City Human Rights Law, N.Y.C. Administrative Code § 8-101 et seq. ("CHRL"). *See* Amended Complaint, filed January 19, 2021, ECF No. 29. Plaintiff asserts claims against Defendant City of New York ("City"), and individually named Defendants former Mayor Bill de Blasio, former Police Commissioner James P. O'Neil, and former Police Commissioner Dermot Shea (collectively, "Individual Defendants"), (collectively with the City, "Defendants").

Defendants filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, Defendants' motion for summary judgment, ECF No. 63, is hereby **GRANTED.**

**BACKGROUND**

I.      **Statement of Facts**

The following allegations are derived from Plaintiff's amended complaint, the Parties' 56.1 statements, and documents relied upon therein.

### A. Plaintiff's Personal History

Plaintiff was appointed as a police officer by the New York City Police Department ("NYPD") on August 30, 1998. *See* Deposition Transcript of Efrain Santiago ("Santiago Deposition"), dated July 26, 2022, Ex. A. at 23:14-16; *See also* Order of Discontinuance of Police Service, DEF24169, Ex. B.1. Plaintiff identifies as a Black Hispanic male whose national ancestry is Puerto Rican. *See* Santiago Dep. Tr. at 65:21-22, 75:2-3. Plaintiff enlisted in the United States Marine Corps in December 2002. *See* Santiago Dep. Tr., at 16:23-17:3. 4. Plaintiff joined the United States Air Force in 2013. *See* Santiago Dep. Tr., at 17:4- 8.

### B. June 2003 Arrest

In June 2003, while on military leave in California, Plaintiff was arrested and charged with assault while in possession of a deadly weapon. Santiago Dep Tr., at 37:10-21; *See also* Patrol Services Bureau, "M" Case Investigation – Final Report, M No.2015-1799, dated February 12, 2018, ("Investigation Final Report"), DEF09870-DEF09885, Ex. I, at DEF09874. Plaintiff pleaded guilty to disorderly conduct. *See* Santiago Dep. Tr., at 37:25-38:2. As a result of the arrest, the NYPD suspended Plaintiff for thirty (30) days and issued charges and specifications against him. *See* Letter from Police Pension Fund, dated July 18, 2003, DEF24058, Ex. C; *See also* Ex. I at DEF09874. 8. As a result of Plaintiff's suspension, Plaintiff's new equated date of appointment for purpose of calculating Plaintiff's pension was September 30, 1998. *See* Ex. C. In resolution of the charges and specifications proffered against him, on October 4, 2005, Plaintiff entered into a negotiated settlement wherein he pled and forfeited seventeen (17) vacation days. *See* Ex. A, at 51:2-16.

**2005 Settlement**

On December 12, 2005, Plaintiff received a settlement and signed a release as part of the settlement of the class action Latino Officers Assn. of the City of Bew York, Inc., et. al., v. City of New York, et. al., 99-CV-9568. *See* Release, signed December 12, 2005, DEF23864, Ex. D.

**B. Disciplinary Case Nos. 2012-7892 (Criminal Association 1) and 2013-10062 (Unauthorized Tow)**

**Disciplinary Case No. 2012-7892 (Criminal Association 1)**

In January 2012, Edwin Roa was arrested for impersonating a police officer while driving Plaintiff's personal vehicle. *See* Trial Transcript for Disciplinary Cases Nos. 2012- 7892 and 2013-10062, dated March 27, 2014, ("2014 Mitigation Hearing"), DEF024611- DEF024646, Ex. E, at DEF024639; Trial Transcript for Disciplinary Cases Nos. 2012-7892 and 2013-10062, dated September 19, 2013, ("Guilty Plea"), DEF024595-DEF024603, Ex. F, at Tr. 3:16-19, DEF024597.

Plaintiff was issued the following charges and specifications: (1) Plaintiff "on or about and between December 2010 and July 2012, did knowingly associate with Edwin Roa, a person reasonably believed to be engaged in, likely to engage in, or to have engaged in criminal activities," (2) Plaintiff engaged in unauthorized off-duty employment with Danny Nicholas, and (3) Plaintiff engaged in unauthorized off-duty employment with Edwin Roa. *See* Ex. A, at 52:16-53:15; *See also* Ex. E, at DEF024614-DEF024615; *See also* Report and Recommendation Memorandum, Disciplinary Case Nos. 2012-7892 and 2013-10062, dated September 23, 2014, ("2014 Report and Recommendation"), DEF23843-DEF23849, Ex. G, at DEF23843-DEF23844.

A second police officer, Edward Carey ("Officer Carey"), who is white, was also issued charges and specifications for criminal association and unauthorized off-duty employment with Edwin Roa and Danny Nicholas. *See* Ex. E, at DEF024638.

**Disciplinary Case No. 2013-10062 (Unauthorized Tow)**

Plaintiff was issued charges and specifications alleging that Plaintiff, "on or about February 20, 2012 . . . after responding to a motor vehicle accident, fail to notify a Communications dispatcher that a tow was needed and allowed an unauthorized tow company to remove a vehicle from the scene." *See* 2014 at DEF024614; *See also* Ex. A, at 54:25- 55:4; *See also* Ex. G, at DEF23844.

**Department Trial**

On September 19, 2013, in an appearance before the Deputy Commissioner of Trials Martin G. Karopkin, Plaintiff, represented by counsel, pleaded guilty to all charges and specifications for disciplinary cases 2012-7892 (Criminal Association 1) and 2013-10062 (Unauthorized Tow). *See* Ex. F, at DEF024600-DEF023601; *See also* Ex. A, at 58:2-3; *See also* Ex. E, at DEF024619-DEF024631. On March 27, 2014, Plaintiff attended a mitigation hearing before the Assistant Deputy Commissioner of Trials Amy J. Porter, wherein Plaintiff testified under oath and was represented by counsel. *See* Ex. E, at DEF024619-DEF024631. At the mitigation hearing, Plaintiff reentered his guilty pleas. *See* Ex. E, at DEF024614-DEF024615. -5- 18. Plaintiff testified that he met Edwin Roa around 2006-2007 and discovered Roa's criminal record about a year later but continued to associate with him. *See* Ex. E, at Tr. 15:21-23, Tr. 16:4-11, DEF024622-DEF024623; *See also* Ex. A, at 60:4-17. 19. Plaintiff testified that he did not submit an off-duty employment application for his work with Edwin Roa. *See* Ex. E, at Tr. 19:17-23, DEF024625; *See also* Ex. A, at 28:15-20, 61:1-10. 20. At the mitigation hearing, when asked,

4

"Have you had any contact with [Edwin Roa] since you were questioned pursuant to Patrol Guide 206-13 in 2012?", Plaintiff testified, "No, I have not." Ex. E, at Tr. 17:19-18, DEF024624.

Plaintiff testified that on February 20, 2012, Plaintiff and his partner responded to a traffic accident but Plaintiff did not call the Communications Dispatcher to request a tow truck and did not notify the Communications Dispatcher that a second unauthorized tow truck had arrived at the scene because he assumed his partner had done so. *See* Ex. E, at DEF024626-DEF024627.

On September 23, 2014, Assistant Deputy Commissioner Amy J. Porter issued a report and recommendation for Plaintiff's penalty for disciplinary cases 2012-7892 and 2013- 10062, which was subsequently approved by former Police Commissioner William J. Bratton. *See* Ex. G. 23. Assistant Deputy Commissioner Porter noted that because Plaintiff was "forthright" with both the NYPD investigators at the mitigation hearing about his relationship with Edwin Roa and ceased contact with Edwin Roa after directed to do so by the NYPD, while Officer Cary had not, Plaintiff's penalty should be lesser than Officer Carey's and recommended that Plaintiff forfeit forty (40) vacation days. *See* Ex. G, at DEF23848-DEF23849.

Plaintiff forfeited a total of (40) vacation days. *See* Ex. A, at 58:11-12. 25. Officer Carey forfeited forty-five (45) vacation days and was placed on oneyear dismissal probation. *See* Ex. E, at DEF024640; Ex. G, at DEF23848.

**C.  Plaintiff's Misconduct in 2015**

Due to Plaintiff's history of discipline, effective January 12, 2015, Plaintiff was placed in the Disciplinary Monitoring Program. *See* Notification of Placement into Level II – Disciplinary Monitoring, dated February 3, 2015, Ex. H, DEF23804; *See also* Ex. A, at 64:24-65:4.

**Disciplinary Case No. 2015-13168 (Criminal Association 2)**

On June 10, 2015, Plaintiff was issued the following charges and specifications: (1) "between August 3, 2013 and December 31, 2013, [Plaintiff] associated with Mr. Edwin Roa, an individual [Plaintiff] knew possessed a criminal history," (2) Plaintiff disobeyed a direct orders from Lieutenant James Koschman and Sergeant Christopher Sharpe to cease any contact with Edwin Roa, and (3) Plaintiff "failed to testify truthfully and completely" at the March 27, 2014 mitigation hearing. *See* Report and Recommendation Memorandum, Disciplinary Case No. 2015-13168, dated September 13, 2018, ("2018 Report and Recommendation"), DEF21238-DEF21243, Ex. R, at DEF21239; Trial Transcript for Disciplinary Cases Nos. 2015-13168 and 2015-14268, dated August 22, 2018, ("August 2018 Mitigation Hearing"), DEF024523-DEF024589, Ex. Q, at Tr. 3:8-16, DEF024524-DEF024525; *See also* Ex. A, at 61:20-24.

**September 5, 2015 Arrest**

On September 5, 2015, at approximately 1:30 A.M., Plaintiff and his sister entered the residence of Plaintiff's former girlfriend, who had changed the locks to the residence, and entered the ex-girlfriend's bedroom as she slept to serve her with a summons for a child custody petition. *See* Ex. I, at DEF09872, DEF09876.

Plaintiff's ex-girlfriend filed a police report alleging Plaintiff's unauthorized entrance to her residence and alleged several prior physical assaults by Plaintiff which she corroborated with photographs of her alleged physical injuries. *See* Ex. I, at DEF09872. On September 5, 2015, Plaintiff was arrested on charges of trespass, domestic violence, and child abuse. He was suspended from the NYPD without pay for thirty (30) days. *See* Certificate of Disposition, in The People of the State of New York v. Efrain Santiago, Bronx Supreme Criminal Court, Docket No. IND-03261-15/001, Legacy Docket No. 03261-2015, DEF23885, Ex. J; *See also* Ex. I, at DEF09873; *See also* Letter from New York City Police Pension Fund, dated October 8, 2015,

DEF23924, Ex. K; *See also* Ex. A, at 38:7-8, 38:18- 22, 39:25-40:5. As a result of Plaintiff's suspension, Plaintiff's new equated pension date of appointment was October 29, 1998. *See* Ex. K.

Following plaintiff's arrest, Plaintiff's ex-girlfriend received a temporary order of protection against Plaintiff on September 10, 2015. *See* Ex. I, at DEF09874. 33. The Bronx Criminal Court Case number associated with this arrest is 2015- BX-042378. *See* Ex. I, at DEF09874.

**Disciplinary Case No. 2015-14268 (Trespass)**

On September 14, 2015, Plaintiff was issued charges and specifications in connection with his September 5, 2015, arrest. *See* Ex. Q, at Tr. 3:17-25, DEF024525. -8- 35. At the request of the Bronx County District Attorney's Office, the NYPD ceased its internal investigation until after the completion of the criminal proceeding against Plaintiff. *See* Ex. I, at DEF09876. 36. The NYPD concluded its investigations into disciplinary cases 2015-14268 (Trespass) and 2015-14673 (Alleged Domestic Violence) on February 2, 2018. *See* Ex. I.

**November 17, 2015 Arrest**

Plaintiff was subsequently re-arrested on November 17, 2015, for violation of an active order of protection and suspended without pay for thirty (30) days. *See* Certificate of Disposition Indictment, in The People of the State of New York v. Efrain Santiago, Bronx Supreme Criminal Court, Docket No. 2015-BX-054475, DEF09647, Ex. L; *See also* . I, at DEF09873; *See also* Ex. A, at 47:4-8, 47:18-21, 49:5-11.

As a result of Plaintiff's suspension, Plaintiff's new equated pension date of appointment was November 28, 1998. *See* Letter from New York City Police Pension Fund, dated December 18, 2015, DEF23895, Ex. M.

**Disciplinary Case No. 2015-14673**

On November 17, 2015, Plaintiff was issued charges and specifications for prejudicial conduct for violating a valid order of protection issued by the Bronx Family Court. *See* Charges and Specifications, IAB Log No. 2015-36381, Disciplinary Case No. 2015-14673, DEF09644-DEF09645, Ex. N.

### D. Criminal Trial

Criminal cases 2015-BX-054475 and 2015-BX-042378 were tried concurrently in a combined Family Court-Criminal Court as the cases involved children in common. *See* Ex. I, at DEF09878. 42. Plaintiff was represented by private counsel in the criminal proceedings. *See* Ex. A, at 41:7-9, 44:7-9.

A jury trial was held on October 3, 2017. *See* Certificate of Disposition Indictment, in The People of the State of New York v. Efrain Santiago, Bronx Supreme Criminal Court, Case No. 03261-2015, Lower Court No. 2015-BX-042378, DEF09646, Ex. O; *See also* Ex. A, at 44:3-4. 44. On October 3, 2017, Plaintiff was found guilty and convicted of Criminal Trespass in the Second Degree. *See* Ex. J. On November 20, 2017, Judge Alvarado sentenced Plaintiff to three (3) years' probation and issued a five (5) year order of protection against Plaintiff. *See* Ex. O. As part of the probation, Plaintiff was required to attend twenty-seven (27) weeks of domestic violence classes. *See* Ex. A, at 108:19-21. 47. The order of protection included a stipulated full no firearms possession restriction against Plaintiff that remained in effect until November 19, 2022. *See* Ex. I, at DEF09879; *See* Order of Protection, Indictment No. 3261-15, dated November 20, 2017, DEF024279-DEF024281, Ex. P.

Plaintiff's application to the Court for permission to carry a firearm while on patrol as a police officer was denied and Plaintiff was ordered to pay two-hundred and fifty dollars ($250) in fees. *See* Ex. A, at 109:19-110:4; Ex. O.

8

The NYPD Patrol Guide states that "[a]ll uniformed members of service are required as a condition of employment to remain qualified to possess firearms for the duration of their tenure with the department." Patrol Guide, Procedure No. 206-19, "Orders of Protection Served on Members of the Service," effective June 25, 2020, DEF19625-DEF19631, Ex. Y, at DEF19625.

The NYPD Patrol Guide also states, "[m]embers who are recipients of Final Orders of Protection prohibiting firearms possession at all times (on and off-duty) will be given the opportunity to apply to the issuing court for a modification of the Order to allow the member to possess firearms while on-duty. If the member is unable to have the Final Order of Protection modified…the member will be subject to termination from the [NYPD] if the member has not retired, vested, or resigned." Ex. Y, at DEF19626.

### E.  Resolution of Disciplinary Cases Nos. 2015-13168 (Criminal Association 2), 2015-14268 (Trespass), and 2015-14673 (Alleged Domestic Violence) Department Investigation

Following its course of investigations into Disciplinary Cases Nos. 2015- 14268 (Trespass), and 2015-14673 (Alleged Domestic Violence), the NYPD determined that "based upon of the preponderance of the evidence, Officer Santiago engaged in actions of Domestic Incitements with the complainant [Plaintiff's ex-girlfriend] for which he was arrested and charged in criminal court." *See* Ex. I, at DEF09883. 53. The NYPD substantiated the following allegations: (a) domestic incident allege to commit other – criminal trespass, (b) two of the allegations of domestic incident endangering welfare of a child, (c) domestic incident allege to commit other harassment, (d) -11- domestic incident allege to commit assault, (e) domestic incident allege to commit other (to cause restriction of breathing), (f) domestic incident allege to commit other – intentional damaged property, (g) domestic incident allege to commit menacing, (h) domestic

incident assault no OOP, (i) domestic incident to commit violation of order of protection, and (j) violation of order of protection. *See* Ex. I, at DEF09883-DEF09884.

**Department Trial and Mitigation Hearing for Disciplinary Case No. 2015-13168 (Criminal Association 2)**

A trial and mitigation hearing in which Plaintiff was represented by counsel was held for disciplinary case 2015-13168 on August 22, 2018. *See* Ex. Q. 55. At the mitigation hearing, the parties agreed to remove disciplinary case 2015- 14268 (Trespass) from that day's docket and proceed only with disciplinary case 2015-13168 (Criminal Association 2). *See* Ex. Q, at Tr. 14:16-15:23, DEF024533-DEF024534.

Plaintiff pleaded guilty to: (1) "between August 3, 2013 and December 31, 2013, [Plaintiff] associated with Mr. Edwin Roa, an individual [Plaintiff] knew possessed a criminal history," (2) Plaintiff disobeyed a direct orders from Lieutenant James Koschman and Sergeant Christopher Sharpe to cease any contact with Edwin Roa, and (3) Plaintiff "failed to testify truthfully and completely" at the March 27, 2014, mitigation hearing. criminal association with Edwin Roa. *See* Ex. Q, at Tr. 18:9-15, DEF024537; *See also* Ex. R, at DEF21239.

At the mitigation hearing, Plaintiff testified under oath that that he first met Edwin Roa in 2011, which was in direct contradiction of his March 2014 sworn testimony. *See* Ex. Q, at Tr. 27:2-3, DEF024545; *see also* Ex. A, at 63:2-5. 59. Plaintiff testified, in direct contradiction of his March 2014 testimony, that he first learned of Edwin Roa's criminal history at some time between 2012 and 2013. *See* Ex. Q, at Tr. 27:19-25, DEF024545.

Plaintiff testified that he called Edwin Roa despite the instruction to cease all contact with Edwin Roa because Edwin Roa owed Plaintiff money. *See* Ex. Q, at Tr. 35:6- 11, 36:14-17, DEF024552-DEF024553. Plaintiff testified, "I lied. I messed up." *See* Ex. Q, at Tr. 48:14,

DEF024563. On September 13, 2018, Assistant Deputy Commissioner of Trials Jeff S. Adler,

issued a report and recommendation that Plaintiff be dismissed from the NYPD. *See* Ex. R, at

DEF21239.

In denying any mitigation of the recommended penalty, Assistant Deputy Commissioner

Adler noted, "it is deeply troubling that [Plaintiff] disregarded the unambiguous orders from two

[NYPD] supervisors and continued to associate with an individual who he knew had an extensive

and serious criminal history. [Plaintiff] then compounded this poor judgment with his blatantly

false testimony at the disciplinary trial on March 27, 2014. When asked whether he had any

additional contact with Roa after being instructed not to on July 19, 2012, [Plaintiff] answered

unequivocally that he had not had any contact. As [Plaintiff], himself, acknowledged on the

witness stand here, that March 27 testimony was knowingly false . . . [Plaintiff], under oath,

deliberately concealed that he had continued business dealings with Roa after he had been

specifically directed not to do so." *See* Ex. R, at DEF21242.

Assistant Deputy Commissioner Adler also opined, "When, as here, an officer willfully

testifies falsely, he undermines the public's trust in its police. With his actions, [Plaintiff] has

compromised his ability to testify under oath in future cases." *See* Ex. R, at DEF21243.

Effective September 4, 2018, Plaintiff was suspended without pay for thirty (30) days while

the recommended penalty of dismissal from the NYPD was pending review by the Police

Commissioner. *See* Report of Suspension, Deputy Commissioner-Trials, dated September 4,

2018, DEF21246, Ex. S. As a result of Plaintiff's suspension, Plaintiff's new equated pension

date of appointment was December 27, 1998. *See* Letter from New York City Police Pension

Fund, dated October 9, 2018, DEF24204, Ex. T. 67. Effective October 4, 2018, Plaintiff was

suspended with pay for thirty (30) days while the recommended penalty of dismissal from the

NYPD was pending review by the Police Commissioner. *See* Report of Suspension, Deputy

Commissioner-Trials, dated October 3, 2018, DEF09535, Ex. U. F.

**Plaintiff's Separation from the NYPD**

On September 20, 2018, Plaintiff submitted a pension application which noted that he was

applying for a vested separation with disciplinary charges pending and that he had completed

nineteen years of service. *See* Pension Application, signed September 20, 2018, DEF21234, Ex.

V; *See also* Ex. A, at 31:19-23. As part of his pension application, Plaintiff signed a "Vested

Separation: Loss of Benefits Acknowledgement" form wherein Plaintiff was informed that

employees who choose a vested retirement are not entitled to the variable supplement retirement

benefit. *See* Vested Separation: Loss of Benefits Acknowledgement, signed September 20, 2018,

DEF24185- DEF24186, Ex. W; *See also* Ex. A, at 34:11-22, 35:4-6.

Plaintiff testified at his deposition that, when he submitted his retirement paperwork, he

requested to utilize his vacation days but the request was denied because he was already on

suspension. *See* Ex. A, at 32:19-33:4.

For purposes of calculating Plaintiff's pension, Plaintiff's equated date of appointment was

December 27, 1998. *See* Ex. B. 72. Plaintiff's vested retirement was effective October 19, 2018.

*See* Ex. B. At the time of Plaintiff's vested retirement, Plaintiff had accrued nineteen (19) years

ten (10) months and twenty-two (22) days of service. *See* Ex. B.

On October 23, 2018, Police Commissioner James P. O'Neil approved the recommended

penalty of termination. *See* Ex. R, at DEF21243.

At his deposition, Plaintiff testified that he believed that the following were due to his race:

(a) domestic violence allegations levied against him by his ex-girlfriend, (b) his arrest on

domestic violence charges, (c) the District Attorney's investigation into the domestic violence

12

charges, (d) the NYPD's investigation into the domestic violence allegations, (e) the union's failure to defend Plaintiff, (f) the NYPD's alleged failure to investigate Plaintiff's ex-girlfriend, (g) the 2018 trial and mitigation hearing, and (h) the recommended penalty of termination. *See* Ex. A, at 65:23-66:9, 67:13-19, 67:23-68:7, 69:6-19, 79:20-25. Plaintiff testified that he believed that denied the "benefit of doubt" due to his race. *See* Ex. A, at 68:13-69:5. Plaintiff testified that he believed the number of days he willingly forfeited as penalties for admitted misconduct were discriminatory on the basis of his race, color, and national origin and retaliatory. *See* Ex. A, at 79:20-22, 80:1-3, 80:20-22, 91:4-6.

Plaintiff testified that he believed he was harassed because of his race because he received two phone calls – one from someone who identified himself as Edwin Roa and a second from someone who identified himself as a delivery man looking for Edwin Roa – that Plaintiff believes were from the NYPD's Internal Affairs Bureau. *See* Ex. A, at 70:24- 71:22.

Plaintiff testified that his sole internal complaint to the NYPD alleging discrimination was when he filed a claim in 2005 as part of the Latino Officers lawsuit. *See* Ex. A, at 85:16-22. Plaintiff testified that he believed the August 22, 2018, trial and mitigation hearing for disciplinary case 2015-13168, and the substantiation of the charges and specifications in 2015-14268 were in retaliation for the NYPD's investigations into Plaintiff. *See* Ex. A, at 86:21-87:11. 81. Plaintiff testified at his deposition that he believed he was retaliated against when he was transferred to an unspecified position after being issued charges and specifications for disciplinary cases no. 2015-13168 (Criminal Association 2). *See* Ex. A, at 89:3-8, 16- 19.

**PROCEDURAL HISTORY**

On August 14, 2019, Plaintiff filed a complaint with the EEOC alleging only race discrimination. *See* Equal Employment Opportunity Commission Intake Questionnaire ("EEOC Complaint"), received August 14, 2019, Plaintiff_000598-Plaintiff_000606, Ex. X, at Plaintiff_000599.

Plaintiff filed this action on August 6, 2020. ECF No. 1. On January 19, 2021, he filed an amended complaint alleging discrimination, harassment, disparate treatment, and retaliation on the basis of race (Black Hispanic), national origin (Puerto Rican ancestry), and color (Black Hispanic) under (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); (2) 42 U.S.C. § 1981 ("Section 1981"); (3) 42 U.S.C. § 1983 ("Section 1983"); (4) New York State Human Rights Law ("SHRL"), N.Y. Exec. Law § 296 et seq.; and (5) New York City Human Rights Law, N.Y.C. Administrative Code § 8-101 et seq. ("CHRL"). *See* Am. Compl., ECF No. 29. On March 14, 2023, Defendants filed their motion for summary judgment. ECF No. 63. Plaintiff filed his opposition brief on June 13, 2023. ECF No. 74. Defendants filed their reply brief on July 12, 2023. ECF No. 79. The Court considers the motion fully briefed.

## STANDARD OF REVIEW

### I.    Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no issue of material fact where the facts are irrelevant to the disposition of the matter. Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Walton Ins. Ltd.*, 696 F. Supp. 897, 900 (S.D.N.Y. 1988). To avoid summary judgment, a party must "do

more than simply show that there is some metaphysical doubt as to the material facts."
*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In deciding a summary judgment motion, courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). Courts may not assess credibility, nor may they decide between conflicting versions of events because those matters are reserved for the jury. *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* (quoting *Anderson*, 477 U.S. at 252). At summary judgment, the moving party has the burden "to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'Ship*, 22 F.3d 1219, 1223 (2d Cir. 1994).

Summary judgment is "ordinarily inappropriate" in employment discrimination cases where the employer's intent and state of mind are in dispute. *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000); *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 54 (2d Cir. 1996); *see Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d at 1224; *Montana v. First Fed. Sav. & Loan Ass'n*, 869 F.2d 100, 103 (2d Cir. 1989); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). Moreover, in discrimination cases summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial . . . . There must either be a lack of evidence in support of the plaintiff's position, . . . or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error. *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 54 (2d Cir. 1998).

When deciding whether summary judgment should be granted in a discrimination case, we must take additional considerations into account. *Gallo v. Prudential Residential Services*, 22 F.3d 1219, 1224 (2d Cir. 1994). "A trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue." Id. "[A]ffidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Id*.

Summary judgment remains appropriate in discrimination cases, as "the salutary purposes of summary judgment -- avoiding protracted, expensive and harassing trials -- apply no less to discrimination cases than to . . . other areas of litigation." *Weinstock*, 224 F.3d at 41 (internal quotation marks omitted); *see also Abdu-Brisson v. Delta Air Lines, Inc*., 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases."). *Desir v. City of New York*, 453 F. App'x 30, 33 (2d Cir. 2011).

## DISCUSSION

### I.      It is Undisputed that Plaintiff's Claims Are Largely Time-Barred

It is undisputed that all Title VII claims that accrued three hundred days before Plaintiff's August 14, 2019 EEOC filing, or before October 19, 2018, are time-barred. *See* 42 U.S.C. § 2000e-5(e)(1); *See also* Def. 56.1 ¶ 82; Pl. 56.1 ¶ 83. Therefore, all Title VII claims that accrued on or before October 18, 2018 are time-barred as a matter of law and are dismissed.

It is similarly undisputed that all SHRL and CHRL claims that accrued three years before Plaintiff initiated the lawsuit on August 5, 2020 are time-barred. *See Mejia v. T.N. 888 Eighth Avenue LLC Co*., 169 A.D.3d 613, 614 (1st Dep't 2019); *Bermudez v. City of New York*, 783 F.

Supp. 2d 560, 585 (S.D.N.Y. 2011). Therefore, all SHRL and CHRL claims that accrued on or before August 5, 2017, are time-barred as a matter of law and are dismissed.

**II.      It is Undisputed that Plaintiff Failed to Exhaust His Administrative Remedies**

It is undisputed that Plaintiff did not exhaust his administrative remedies for his Title VII national origin and color discrimination claims. *See* Def. 56.1 ¶ 82; *see also* Pl. 56.1 ¶ 83. As such, Plaintiff's Title VII color and national origin discrimination claims are dismissed. *See*, e.g., *James v. Borough of Manhattan Community Coll.*, 2021 U.S. Dist. LEXIS 229173 (S.D.N.Y. 2021).

**III.     Plaintiff's Section 1981 and 1983 Claims Are Dismissed**

It is undisputed that there is no private right of action under Section 1981. Plaintiff's Section 1981 claims fail as a matter of law and are dismissed. *See, e.g.*, *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018).

Plaintiff has voluntarily withdrawn his Section 1983 claims against all Defendants. *See* Pl. Opp. at 1. Therefore, Plaintiff's 1983 claims are dismissed.

Plaintiff also concedes that he has not brought causes of action for hostile work environment or retaliation. *Id*. Therefore, these claims are dismissed as a matter of law.

**IV.     Plaintiff Cannot Plead a New Constructive Discharge Claim in His Opposition**

Plaintiff has asserted a constructive discharge claim for the first time in his opposition brief. *See* Pl. Opp. at 9. However, Plaintiff did not bring a cause of action for constructive discharge and constructive discharge appears nowhere in Plaintiff's amended complaint. *Se generally*, Am. Compl., ECF. No. 29. Plaintiff cannot plead a new cause of action in his opposition. *See Sec. & Exch. Comm'n v. Yorkville Advisors, LLC*, 305 F. Supp.3d 486, 531 (S.D.N.Y. 2018) (ruling that plaintiff "cannot now amend [its] complaint merely by raising new facts or theories in [its] briefs"); *Rao v. Rodriguez*, 2017 U.S. Dist. LEXIS 49285, at *5 n.8 (E.D.N.Y. 2017) (declining to consider constructive discharge claim raised for the first time at summary judgment).

## V.    There Are No Triable Issues of Material Fact as to Plaintiff's Discrimination or Disparate Treatment Claims

Discrimination and disparate treatment claims are analyzed using the burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case of discrimination under Title VII or SHRL, Plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the employment; (3) he was subjected to an adverse employment decision or action; and (4) the adverse action occurred under circumstances that give rise to an inference of discrimination. *Ruiz v. County of Rockland,* 609 F.3d 486, 491-92 (2d Cir. 2010). Under the CHRL, Plaintiff need not show that the employment action was materially adverse; rather, "a plaintiff must simply show that she was treated differently from others in a way that was more than trivial, insubstantial or petty." *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 258 (E.D.N.Y. 2012). However, even under the CHRL, there must be a causal connection between Plaintiff's protected characteristic and the adverse employment action. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109, 113 (2d Cir. 2013). Even

under the more lenient CHRL, Plaintiff must set forth some allegations tending to demonstrate a causal connection between his race, color, or national origin, something he has failed to do. *See* Id. at 113.

Plaintiff cannot satisfy all of the elements of his prima facie case, and therefore his discrimination claim must be dismissed.

## A. Plaintiff's Discrimination Claim Must Be Dismissed

It is undisputed that Plaintiff is a member of a protected class. However, Plaintiff has failed as a matter of law to demonstrate that he was qualified for the position, that he was subjected to an adverse employment decision or action; and the adverse action occurred under circumstances that give rise to an inference of discrimination. Because he cannot prove a prima facie case of discrimination based on race, color, or national origin under Title VII or SHRL, his claim does not survive summary judgment.

### 1. Plaintiff Was Not Qualified for his Position as a Police Officer

"To show 'qualification' . . . the plaintiff need not show perfect performance or even average performance. Instead, [he] need only make the minimal showing that [he] possesses the basic skills necessary for performance of the job." *See Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001). Because Plaintiff has failed to make this minimal showing, he has not sufficiently proven that he was qualified for his position as a police officer.

It is undisputed that Plaintiff knowingly associated with a known felon, disobeyed a direct order from his commanding officers to cease contact with a known felon, failed to testify truthfully under oath, was convicted of Criminal Trespass in the Second Degree, and was prohibited from owning or operating a gun at all times by Court order. *See* Def. 56.1 Statement ¶¶ 12, 14-15, 17- 19, 27, 44, 47-4857, 61. In his report and recommendation, Assistant Deputy

Commissioner Adler noted "[w]hen, as here, an officer willfully testifies falsely, he undermines the public's trust in its police. With his actions, [Plaintiff] has compromised his ability to testify under oath in future cases." *See* Def. 56.1 Statement ¶ 63.

In addition, "[a[ll uniformed members of service are required as a condition of employment to remain qualified to possess firearms for the duration of their tenure with the department." Def. 56.1 Statement ¶ 50. It is undisputed the Plaintiff was the subject of an order of protection that prohibited Plaintiff from possessing firearms and Plaintiff was not permitted to carry a firearm while on patrol as a police officer. *See* Def. 56.1 Statement ¶¶ 47-48. The Patrol Guide clearly states, "[m]embers who are recipients of Final Orders of Protection prohibiting firearms possession at all times (on and off-duty) will be given the opportunity to apply to the issuing court for a modification of the Order to allow the member to possess firearms while on-duty. If the member is unable to have the Final Order of Protection modified… the member will be subject to termination from the [NYPD] if the member has not retired, vested, or resigned." 56.1 Statement ¶ 51. Because Plaintiff's request for a modification was denied, Plaintiff was legally not permitted to carry a firearm and therefore he was unqualified for his position as a matter of law.

Plaintiff argues that because he remained employed by the NYPD until he resigned, he was qualified for his position. But Plaintiff's extensive disciplinary history is undisputed and demonstrates that Plaintiff was unqualified for the position. "Plaintiff, himself, concedes that he engaged in much of the conduct described...Such a disciplinary record…evinces an employee who is unable to perform his job in a satisfactory manner. As a matter of law, that record is sufficient to support a finding that plaintiff was unqualified for his position." *Forsythe v. Amalgamated Warbasse Houses, Inc.*, 2012 U.S. Dist. LEXIS 59421, at *17 (S.D.N.Y. 2012).

### 2.  Plaintiff Did Not Suffer Any Adverse Employment Actions

An "adverse employment action" is one which is "'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Feingold v. New York*, 366 F.3d 138, 152 (2d. Cir. 2004) (internal citations omitted). Examples of materially adverse employment actions include "'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Id*. (internal citations omitted).

As described above, the only timely alleged adverse action under Title VII is Plaintiff's voluntary vested retirement. Plaintiff's voluntary retirement, even though it was made in the face of pending discipline, was not an adverse action. *See Singh v. New York State Dep't of Tax. & Fin*., 911 F. Supp.2d 223, 234 (W.D.N.Y. 2011) (Curtin, J.) (*citing, e.g.*, *Miller v. Praxair, Inc*., 408 F. App'x 408, 410-11 (2d Cir. 2010) ("If the employment action is the result of the voluntary resignation or retirement, "then the requirement of an adverse employment action is not satisfied"). Moreover, as part Plaintiff's voluntary vested retirement, Plaintiff's pension application warned that vested retirements are not eligible for a variable supplement and Plaintiff signed a waiver acknowledging that by accepting a vested retirement, he was waiving his right to a variable supplement. *See* Def. 56.1 Statement ¶¶ 68-69.

The only timely alleged adverse actions under SHRL and CHRL, are: (a) the substantiation of charges and specifications relating to disciplinary cases 2015-14268 (Trespass) and 2015-14673 (Alleged Domestic Violence) (*See* Def. 56.1 Statement ¶¶ 52-53), (b) the August 2018 mitigation hearing for disciplinary case 2015-13168 (id. ¶¶ 54-57), (c) Assistant Deputy Commissioner Adler's recommendation that Plaintiff be terminated (id. ¶¶ 62-64), (d) Plaintiff's

thirty day suspension without pay pending the review of Commissioner Adler's recommendation (id. ¶ 65), (e) Plaintiff's thirty day suspension with pay pending review of Commissioner Adler's recommendation (id. ¶ 67), and (f) Plaintiff's voluntary vested retirement (id. ¶¶ 68, 72).

 Here, Plaintiff did not suffer any materially adverse changes in the terms and conditions of employment that were more disruptive than a mere inconvenience or an alteration of job responsibilities. *See Malcolm v. Honeoye Falls Lima Cent. Sch. Dist.*, 483 F. App'x 660, 662 (2d Cir. 2012) (internal citation omitted).

And, in any event, the mere enforcement of preexisting disciplinary policies, which Plaintiff admits are facially neutral, is not an adverse employment action. *See* Am. Compl. ¶ 2 ("The disciplinary process of the NYPD…[is] neutral on its face"); *See also Caruso v. Bon Secours Charity Health Sys., Inc.*, 703 F. App'x 31, 34 (2d Cir. 2017); *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006); *Brown v. City of Syracuse*, 677 F. Supp. 2d 576, 578 (N.D.N.Y. 2010) *aff'd* 673 F.3d 141, 150 (2d Cir. 2012).

### 3.   Plaintiff Cannot Prove that Any Adverse Employment Action Gave Rise to an Inference of Discrimination

Even if the Court were to find that Plaintiff suffered an adverse employment action, Plaintiff has failed to prove that such an action occurred under circumstances that gave rise to an inference of discrimination. As elaborated in the disparate impact section, Plaintiff has not put forth sufficient evidence that but for his race, color, or national origin, he would have retired with his full pension. Rather, Plaintiff's blanket statements that he was "NYPD enemy number one" are nothing but bald assertions that do not prove discriminatory intent. *See, e.g.*, *Bermudez v. City of New York*, 783 F.Supp.2d 560, 581 (S.D.N.Y. 2011) (It is insufficient to simply recite

the "false syllogism: (1) I am (insert name of protected class); (2) something bad happened to me at work; (3) therefore it happened because I am (insert name of protected class).").

There is no evidence that Plaintiff's race, color, or national origin played any role in any employment action. *See, e.g.*, *Robledo v. Bond No. 9*, 965 F. Supp. 2d 470, 475 (S.D.N.Y. 2013) ("a complaint with other possible motives for the alleged conduct that does not contain specific facts supporting a claim of racial animus contradicts a claim of racial discrimination"); *Caruso v. Bon Secours Charity Health Sys., Inc*., 703 F. App'x 31, 34 (2d Cir. 2017) (granting summary judgment for employer where employee "presented no evidence that [an adverse employment action] reflected anything other than [her employer's] enforcement of its preexisting disciplinary policies in a reasonable manner").

The undisputed record is clear. Plaintiff's own misconduct resulted in any purported adverse employment action. When issuing his report and recommendation, Assistant Deputy Commissioner Adler opined, "it is deeply troubling that [Plaintiff] disregarded the unambiguous orders from two [NYPD] supervisors and continued to associate with an individual who he knew had an extensive and serious criminal history. [Plaintiff] then compounded this poor judgment with his blatantly false testimony at the disciplinary trial on March 27, 2014. When asked whether he had any additional contact with Roa after being instructed not to on July 19, 2012, [Plaintiff] answered unequivocally that he had not had any contact. As [Plaintiff], himself, acknowledged on the witness stand here, that March 27 testimony was knowingly false…[Plaintiff], under oath, deliberately concealed that he had continued business dealings with Roa after he had been specifically directed not to do so." *See* Def. 56.1 Statement ¶ 63.

Because Plaintiff has failed to put forth any evidence that suggests that he suffered an adverse employment action because of his race, color, or national origin, his *prima facie* discrimination claim fails.

This Court need not reach Defendant's arguments that, under *McDonnell Douglas*, Defendants had a non-discriminatory reason for their actions as to Plaintiff because Plaintiff has not established an adverse employment action. *See Feggins v. Cty. of Niagara*, 2021 U.S. Dist. LEXIS 224118, *39 (W.D.N.Y., Nov. 19, 2021). Even if he did prove the existence of an adverse employment action, it is undisputed that Plaintiff pleaded guilty to providing false testimony under oath, continued to associate with a known felon, and disobeying direct orders to cease contact with a known felon. *See* Def. 56.1 Statement ¶¶ 57-61. Given Plaintiff's extensive disciplinary record, Defendants had a legitimate business reason to issue charges and specifications, investigate Plaintiff's misconduct, hold a disciplinary trial and mitigation hearing for the misconduct, and *See*k Plaintiff's termination. *See D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

Even under the less stringent burden of CHRL, Plaintiff still fails demonstrate 'by a preponderance of the evidence that [he] has been treated less well than other employees because of [a protected characteristic].'" *Mihalik v. Credit Agricole Cheuvreux N. Am.*, Inc., 715 F.3d 102, 109 (2d Cir. 2013). As described above, Plaintiff has not provided sufficient evidence of racial animus nor has he shown that he was treated "less well" by Defendants due to discriminatory intent. *Id.* at 110.

## B. Plaintiff's Disparate Treatment Claim Must Be Dismissed

When considering whether a plaintiff has raised an inference of discrimination by showing that he was subjected to disparate treatment, a plaintiff must show he was similarly situated in all

material respects to the individuals with whom he *See*ks to compare himself. *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (Title VII); *Varughese v. Mount Sinai Med. Ctr.*, 2015 U.S. Dist. LEXIS 43758, at *128-29 (S.D.N.Y. 2015), aff'd, 693 F. App'x 41 (2d Cir. 2017) (CHRL). The standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's situations where the plaintiff and the comparator were subject to the same discipline standards and engaged in comparable conduct. *Graham*, 230 F.3d at 40.

Plaintiff's Amended Complaint lists numerous purported comparators, yet none of these are sufficiently similar to Plaintiff in all material aspects. *See* Am. Compl. ¶¶ 148-176; *see McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001); *Ruiz v. County of Rockland*, 609 F.3d 486, 493-494 (2d Cir. 2010) ("An employee is similarly situated to co-employees if they were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'") (quoting Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000)); Henry v. NYC Health & Hosp. Corp., 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014) (dismissing claims of disparate treatment where the amended complaint "fail[ed] to describe who [the comparators] are, what their responsibilities were, how their workplace conduct compared to [plaintiff's], or how they were treated"); *Harlen Assoc. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499-500 n.2 (2d Cir. 2001) ("a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met.").

Several of Plaintiff's alleged comparators are of different ranks or titles, they engaged in different alleged misconduct, they were in different units and/or reported to different supervisors, and the Amended Complaint does not specify as to whether the purported discipline was the result of a plea agreement or because of a disciplinary trial. Moreover, all of these purported

comparators are for claims that are time-barred and therefore cannot be utilized to support his disparate treatment claim. *See*, e.g., *Beharry v. City of N.Y.*, 2020 U.S. Dist. LEXIS 193161, at *32-35 (S.D.N.Y. 2020) (refusing to consider purported comparators for time-barred allegations).

Perhaps most detrimental to Plaintiff's disparate treatment claim is that the sole appropriate comparator in the record, police officer Edward Carey, who is white, received a harsher penalty than Plaintiff for the same charges levied against Plaintiff. In 2012, Officer Carey was also issued charges and specifications for criminal association and unauthorized off-duty employment with Edwin Roa and Danny Nicholas. *See* Def. 56.1 Statement ¶¶ 12-13. While Officer Carey forfeited forty-five (45) vacation days and was placed on dismissal probation, Plaintiff forfeited only a combined forty (40) vacation days for three accounts of misconduct - criminal association, unauthorized off-duty employment, and his failure to follow proper procedure when an unauthorized tow truck responded to an accident. *See* Def. 56.1 Statement ¶¶ 23-25. In fact, Assistant Deputy Commissioner Amy J. Porter, who recommended Plaintiff's penalty, noted that Plaintiff should receive a lesser penalty than Officer Carey because Plaintiff had been "forthright" with the NYPD investigators and in his mitigation hearing testimony before Commissioner Porter. *See* 56.1 Statement ¶ 23. Because Plaintiff was treated better than Officer Carey, Plaintiff's disparate treatment claim fails as a matter of law.

## CONCLUSION

On Plaintiff's claims, the Court finds that no material issue of fact remains for trial. Notwithstanding all reasonable inferences against Defendants, the Court finds that Plaintiff has failed to make a sufficient showing on its Title VII, SHRL, and CHRL claims. For the foregoing reasons, Defendant's motion for summary judgment, ECF No. 63, is hereby **GRANTED.**

Plaintiff's Amended Complaint is **DISMISSED** with prejudice pursuant to Fed. R. Civ. P. 56.

The Clerk of the Court is respectfully directed to close the open motion at ECF No. 63.

**SO ORDERED.**

**Dated: September 28, 2024**
**New York, New York**

_____
   **HON. ANDREW L. CARTER, JR.**
   **United States District Judge**

27